Argued February 25, decided March 31, 19(8.

## STATE *v.* LEWIS.

[94 Pac. 831.]

CRIMINAL LAW—TRIAL—RECEPTION OF EVIDENCE—ORDER OF PROOF—
ACTS OF CONSPIRATORS.

1. The common-law rule, in substance incorporated in Section 718, Subdivision 6, B. & C, Comp., that the acts and declarations of one conspirator cannot be admitted in evidence against his fellow conspirator, until proof has been made of the conspiracy, is not unyielding, and, where the circumstances are so peculiar as to require it, the acts and declarations of a conspirator may be introduced in the first instance before proof of the conspiracy.

CONSPIRACY—EVIDENCE—SUFFICIENCY.

2. The fact of a conspiracy may be inferred from circumstances, and the concurring conduct of the persons charged with having entered into a conspiracy need not be directly proved.

SAME.

3. Where, on a trial for larceny, the evidence showed that the offense was committed in a house of ill fame ; that accused was the proprietress thereof ; that codefendant was an inmate ; that prosecutor visited the house and that the codefendant was a principal in the commission of the offense ; that accused shared in the earnings of codefendant, very slight additional evidence was sufficient to justify the inference of a conspiracy between accused and codefendant to commit the offense.

CRIMINAL LAW—PARTIES TO OFFENSES—STATUTES.

4. Under Section 1324, B. & C. Comp., abolishing the distinction between an accessory before the fact and a principal, and between principals in the first and second degress, and declaring that all persons concerned in the commission of a felony shall be punished as principals, one may be convicted of a felony as a principal, on proof that a crime was committed, and that he either immediately participated therein or aided or abetted its commission, though not present.

SAME—ERRONEOUS ADMISSION OF EVIDENCE—PREJUDICIAL ERROR.

5. Where, on a trial for larceny, the evidence showed that the offense was committed in a house of ill fame, that accused was the proprietress thereof, that codefeneant was an inmate thereof, that prosecutor visited the house, that the codefendant was one of the principal actors in the commission of the offense, and that she did not commit the act unaided, the admission in evidence of the acts and declarations of the codefendant while accused was absent, was not prejudicial.

LARCENY—EVIDENCE—ADMISSIBILITY.

6. On a trial for larceny, evidence *held* to connect accused directly with the crime, so that the admission in evidence of the acts and declarations of a codefendant was not erroneous.

From Multnomah: ARTHUR L. FRAZER, Judge.

Statement by MR. COMMISSIONER SLATER.

Defendant jointly with one Grace Reed was charged by information of the district attorney with the crime of

larceny of the sum of $550 from the person of Andrew Johnson in Multnomah County. The parties charged demanded separate trials. Grace Reed being first tried and convicted, on the next day thereafter this defendant was tried and also convicted, and was sentenced to imprisonment in the penitentiary for a term of three years, from which judgment she appeals, assigning as errors the admission of testimony over her objections.

AFFIRMED.

For appellant there was a brief with an oral argument by *Mr. McCants Stewart.*

For the State there was a brief over the names of *Mr. John Manning,* District Attorney, *Mr. H. B. Adams,* Deputy, and *Mr. Andrew M. Crawford,* Attorney General, with an oral argument by *Mr. Adams.*

Opinion by MR. COMMISSIONER SLATER.

1. The defendant, at the time of the alleged larceny, was proprietress of a house of prostitution in Portland, and her codefendant was an inmate thereof. The prosecuting witness was enticed into the house by Grace Reed, and conducted by her to an upstairs room immediately adjoining, but separate from the one occupied by defendant, who at the time was in her room. As the Reed woman and Johnson passed her door she engaged in some conversation with the former, but Johnson, having just recently arrived in this country, was not able to understand what was said, but he does say that defendant asked what they were making so much noise about. Johnson had upon his person about $850 in currency of different denominations, which he had rolled up in a handkerchief, tied round about with a string, and placed in his hip pocket. After this preliminary proof, Johnson, on direct examination, was permitted, over defendant's objection, to testify as to the acts and declarations of Grace Reed while in the room with him, and in the absence of defendant. This evidence tended to show that Johnson, upon

the accomplishment of the purpose of his visit, discovered the loss of his money, and accused Grace Reed with having taken it. All of the surrounding circumstances were given in detail, showing the loss of the money in the room, and necessarily connecting Grace Reed with the taking of it. The essence of the objection is that before offering this testimony no evidence had been offered which *prima facie* tended to prove the existence of a conspiracy between defendant and her codefendant Grace Reed to commit the crime charged, or evidence from which its existence might reasonably have been inferred. The contention is made, and authorities are cited to the general purport, that the declaration of an alleged conspirator, not in the presence of the party to be bound and before the conspiracy is formed, is not admissible to prove the conspiracy. It is frequently said that the acts and declarations of one conspirator cannot be admitted in evidence against his fellow conspirator until proof has been made of the conspiracy. Such was the common-law rule which, in substance, has been incorporated in our Code in Section 718, subd. 6, B. & C. Comp.: *State* v. *Moore,* 32 Or. 65 (48 Pac. 468).

2. The rule, however, is not unyielding. "According to the great weight of authority the order in which the testimony shall be received is largely in the discretion of the trial court. If the circumstances of the case are so peculiar and urgent as to require it, the acts and declarations of a conspirator may be introduced in the first instance before proof of the agreement": 8 Cyc. 682. And it has also been held that, if evidence is improperly admitted by the court before the proper predicate has been laid for its reception, the error is cured by the subsequent introduction of preliminary proof: *Johnson* v. *State,* 29 Ala. 62 (65 Am. Dec. 383) ; *State* v. *Winner,* 17 Kan. 298. This case, however, is not entirely destitute of such preliminary proof. The actual fact of conspiring may be inferred from circumstances, and the concurring conduct of the defendants need not be directly proved.

3. Here the proof shows, and it is not questioned, that the defendant is proprietress of a house of prostitution, and that her codefendant was an inmate. The defendant shares in, and profits by, the ill-gotten earnings of her codefendant. She furnishes the place and opportunity to her codefendant to ply her nefarious business, and she would be bound as a party by all things contemplated by the parties to be done in the pursuit of that business by her codefendant. Such crimes as the one charged are the frequent concomitant of the defendant's business, and very slight evidence, in addition to the established relationship between the parties above noted, would be sufficient to legally justify the inference of the existence of a conspiracy to commit the crime charged.

4. We think, however, that counsel has misconceived the purpose and object of this testimony to which objection has been made. It was not offered to establish the previously formed existence of a conspiracy to commit the crime charged, nor to connect the defendant with the commission thereof merely as a co-conspirator, but it was manifestly offered to establish the *corpus delicti* and the *res gestae* thereof. The existence of a conspiracy to commit the crime is not directly in issue, but the defendants are charged with having jointly committed the crime; and it will be sufficient to convict this defendant as a principal, if it be shown that the crime charged was committed in that county, and that defendant either immediately participated therein or aided or abetted its commission, though not present: B. & C. Comp., § 1324. The acts and declarations of Grace Reed as testified to by Johnson, did not tend directly to implicate the defendant, and therefore could not have prejudiced her; but they did show, not only that such an offense was at that time and place committed, and that Grace Reed was immediately connected with the commission thereof, but also that she was not the only one concerned in its perpetration.

5. The testimony establishes the fact of the larceny of Johnson's money, that Grace Reed was at least one of the principal actors in the commission of the offense, and that she did not commit the act unaided. Evidence subsequently offered, in our opinion, justifies the inference that defendant was an active participant therein. Johnson testifies that when he got on the bed with the Reed woman, the money was in the hip pocket of his pants or overalls, which he did not remove, and that he first discovered his loss when readjusting his clothes, after having accomplished the purpose of his visit; that he at once demanded the return of it by Grace Reed. She denied having it, and told Johnson to look on the bed for it, which he was doing when this defendant came into the room and asked what they were making so much noise about. On being informed by Grace Reed that Johnson claimed he had lost some money, defendant, addressing Johnson, remarked: "Why don't you look on the floor for it?" This Johnson did, and found on the floor near the door a portion of his money, about $250, lying on top of the handkerchief, and near it the string which had been used to bind it. The remainder of the money was by the officers afterwards found secreted in different places in the room and building. Although Johnson swears that defendant was not in the room until the fuss about the loss of the money was made, yet it is plain from the testimony that he was not at all times in a position to observe and know whether any one besides himself and Grace Reed was or was not in the room. The foot of the bed used on this occasion was within three feet of the door, and just far enough from it to allow it to swing freely, and the door itself was padded so as not to make the slightest noise when being opened or closed. These facts, taken in connection with the further circumstance that Johnson, while reclining on top of the codefendant on the bed, with his pants pushed down to his knees, was forcibly held by the latter for two or three

minutes and was not permitted to arise, and that the remnant of the money was found on the floor near the door at the foot of the bed, tend to establish the fact that some third party actively aided in the commission of the crime. The money, while in Johnson's pocket, must have been out of reach of Grace Reed, and therefore could not have been removed by her, but must have been removed by some other person while he was being held by her. The evidence tends to connect this defendant directly with the crime, and therefore no error was committed in the admission of the testimony: *Cox et al.* v. *State,* 8 Tex. App. 254 (34 Am. Rep. 746) ; *Blain* v. *State,* 33 Tex. Cr. 236 (26 S. W. 63).

6. The case of *Kelley* v. *People,* 55 N. Y. 565 (14 Am. Rep. 342) is similar in many respects to the case at bar. At page 576 of 55 N. Y. (14 Am. Rep. 342) of the opinion it is said:

"A conspiracy may be proved, as other facts are proved, by circumstantial evidence, and parties performing disconnected overt acts, all contributing to the same result and the consummation of the same offense, may by the circumstances and their general connection or otherwise, be satisfactorily shown to be conspirators and confederates in the commission of the offense. One party may allure the victim into the den, leaving it to others to effect the robbery, and all will be held equally guilty as confederates. Here the decoy remained with the victim until the larceny was committed, and his relation to and intimacy with the persons on trial were such as to authorize the jury to draw the conclusion that there was a conspiracy between all those present or taking any part in the transaction. The declarations were not given in evidence to prove the guilt of the parties on trial, and as the declarations of one conspirator against another, but as a part of the *res gestae,* a part of the history of the transaction, and as such it was competent."

Some objections were also made to the testimony of Police Officer Goltz as to the acts and declarations of the defendant and Grace Reed after the arrest and while in

his custody, but we are of the opinion that they are without merit, and will not therefore be considered in detail. It follows that the judgment should be affirmed.

AFFIRMED.