[No. 2100]

SYLVIA BOYDSTUN, APPELLANT, *v.* PHILIP JACOBS AND NEWTON JACOBS (A MINOR), RESPONDENTS.

[147 Pac. 447]

1. EXISTENCE OF TRUST—TERMINATION OR REPUDIATION OF TRUST.

While it is not competent for a trustee to assert a legal title by adverse possession or to plead limitations against a *cestui que* trust, when the trusteeship is terminated, or when the trustee denies the trust and asserts ownership of the trust property in such a manner that the *cestui que* trust has actual or constructive notice of the repudiation of the trust, the statute attaches and runs from that time.

2. LIMITATION OF ACTIONS—EXISTENCE OF TRUST—TERMINATION OR REPUDIATION OF TRUST.

Where plaintiff, after accepting a deed from a trustee not including land to which she claimed she was entitled under the terms of the trust, never received or demanded the rents and profits of such real estate, and the trustee collected and retained them without any question as to his right to do so being raised for about nine years, she could not deny that the position taken by the trustee was an assertion of an adverse title to the property.

3. LIMITATION OF ACTIONS—EXISTENCE OF TRUST—TERMINATION OR REPUDIATION OF TRUST.

Where an act is done by a trustee which purports to be an execution of a trust, he is thenceforth regarded as standing at arm's length from the *cestui que* trust, who must assert his claim at the hazard of being barred by limitations.

Opinion of the Court—Coleman, J.

4. LIMITATION OF ACTIONS—EXISTENCE OF TRUST—TERMINATION OR
REPUDIATION OF TRUST.

Where though plaintiff, at the time she accepted a deed from
a trustee which did not include land to which she believed her-
self entitled under the terms of the trust. was the trustee's
wife, she procured a divorce about one year later, she could not
thereafter assert that she was under the trustee's influence to
defeat his claim of title by adverse possession.

5. PLEADING—ISSUES—MATTERS TO BE PROVED—ADMISSIONS.

Where, in an action to recover real property, the answer
alleging title by adverse possession was verified and alleged
payment of taxes by defendant, and such allegation was not
denied by the replication, no evidence ·on this point was
necessary.

6. APPEAL AND ERROR—HARMLESS ERROR—ADMISSION OF EVIDENCE.

A judgment will not be reversed because of the admission of
incompetent evidence which was afterwards stricken out and
which did not prejudice appellant.

APPEAL from Second Judicial District Court, Washoe
County; *Cole L. Harwood,* Judge.

Suit by Sylvia Boydstun against Philip Jacobs and
another. Judgment for defendant, and plaintiff appeals.
**Affirmed.**

*James Glynn* and *O. J. Smith,* for Appellant.

*Summerfield & Richards,* for Respondents.

By the Court, COLEMAN, J.:

This is a suit brought by appellant to recover possession
of certain real property.

Mrs. Dora B. Lachman, on July 8, 1901, conveyed to
Philip Jacobs, as trustee, the following property, namely:

"Lots eleven (11) and twelve (12) in block E in
Powning's addition to Reno; lot four (4) in block T,
with the dwelling house of grantor and another house of
one story thereon; south one-half (½) of lot four (4)
and north one-half (½) of lot three in block O, with the
three stores situated thereon; also the south one-half
(½) of lot five (5) in block O, with the laundry building
thereon; also an undivided interest in the following prop-
erty, lot nineteen (19) and west nineteen (19) feet of lot

twenty (20) in block O with stores; also S. 20 ft. of lots 23 and 24 in block O."

The habendum clause of the deed reads as follows:

"To have and to hold, all and singular the said premises, together with the appurtenances, unto the said party of the second part, his heirs and assigns forever in trust nevertheless for the following uses and purposes namely, to hold the same during the term of my natural life paying over to me during my life all the rents, issues and profits thereof and upon my death said properties shall go to and my said trustee Philip Jacobs shall convey the same (if the law shall require any conveyance) to the following persons, viz, to the child or children of my daughter Sylvia the south one-half ($\frac{1}{2}$) of block O. If at the time of my death my said daughter shall have no other child than her present issue Newton Nevada Jacobs said S. $\frac{1}{2}$ of block O shall go to said Newton. If she shall have more than one child it shall go to her children in equal shares. If she shall have no issue living said property (S. $\frac{1}{2}$ of block O) shall go to my said daughter."

Mrs. Lachman died on July 27, 1901. The appellant in 1896 was married to respondent Philip Jacobs, to whom was born respondent Newton Nevada Jacobs. Appellant and respondent Philip Jacobs lived happily together until March, 1904, when they separated, and were divorced in September, 1904. On July 13, 1903, appellant demanded of Philip Jacobs a conveyance of all the property to which she was entitled under the deed of trust. On that day, and prior to the execution of the deed, she had three conversations with said trustee, in each of which the question as to what property she was entitled to under the trust deed was discussed. She was informed by said trustee, and by his father, with whom she also had a conversation on that day, that the property in question here, which will hereafter be designated as the "Lachman Building," went to her son, Newton Jacobs, and that she received the rent of the property described in the trust deed.

Appellant now contends that it was the intention of

her mother that she should have received the Lachman building, and that Newton Jacobs should have received the south one-half of lot 5. She charges that through the fraudulent misrepresentations of her husband she was induced to accept a conveyance to the property which was transferred to her, instead of the Lachman building.

Respondents denied the charge. of fraud, and also denied that it was the intention of Mrs. Lachman that appellant should receive the Lachman building under the terms of the trust deed, and pleaded affirmatively adverse possession.

The trial court in its findings determined no other question than that set up in the affirmative defense, which it held to have been established.

[1] It is contended by appellant on this appeal that it is not competent for a trustee to assert a legal title by adverse possession or plead the statute of limitations against a *cestui que* trust. The doctrine contended for by appellant is unquestionably correct; but when the trusteeship is terminated, or when the trustee denies the trust and asserts ownership of the trust property in such a manner that the *cestui que* trust has actual or constructive notice of the repudiation of the trust, the statute attaches and begins to run from that time.

"The possession of a trustee is the possession of the *cestui que* trust, so long as the trust is acknowledged; but from the time of known disavowal it becomes adverse." (*Willison* v. *Watkins*, 3 Pet. 52, 7 L. Ed. 596; *Boone* v. *Chiles*, 10 Pet. 223, 9 L. Ed. 388.)

"Conceding what is contended for by the counsel for plaintiff that the statute of limitations does not run against an express trust, it must be borne in mind that this rule is subject to the qualification that when the trust is repudiated by clear and unequivocal words and acts of the trustee who claims to hold the trust property as his own, and such repudiation and claim are brought to the notice of the beneficiary in such a manner that he is called upon to assert his equitable rights, the statute of limitations will begin to run from the time such repudiation

and claim came to the knowledge of the beneficiary." (*Philippi* v. *Philippi*, 115 U. S. 157, 5 Sup. Ct. 1181, 29 L. Ed. 336.)

"But as between trustee and *cestui que* trust, in the case of an express trust, the statute of limitations does not begin to run until the trustee repudiates the trust by clear and unequivocal acts or words, and claims thenceforth to hold the estate as his own, not subject to any trust, and such repudiation and claim are brought to the knowledge of the *cestui que* trust." (*Hearst* v. *Pujol*, 44 Cal. 235.)

"Time begins to run against a trust only from the time when it is openly disavowed by the trustee, who insists upon adverse right and interest, which is fully and unequivocally made known to the *cestui que* trust." (*Janes* v. *Throckmorton*, 57 Cal. 388.)

"Time does not begin to run until the trust is disavowed and the disavowal is made known to the *cestui que* trust." (*Haskell* v. *Hervey*, 74 Me. 197.)

"It is well settled that even in cases of express technical trusts, where the trustee does an act expressive of an intention to repudiate the trust, the knowledge of which is brought home to the *cestui que* trust, the statute will commence to run from that time." (*Boyd* v. *Munro*, 32 S. C. 249, 10 S. E. 963.)

"Without any authority to the purpose, I am of opinion, from the reason and analogy of the law, that when a trustee does an act, which purports to be a final execution of his trust, the statute will begin to run from that time."—From the opinion of the trial judge quoted in *Moore* v. *Porcher*, 1 Bailey, Eq. 197. (*Robinson* v. *Dunn*, 87 N. C. 191; *Helm* v. *Rogers*, 81 Ky. 568; *McCallam* v. *Carswell*, 75 Ga. 28; *University* v. *Bank*, 96 N. C. 287, 3 S. E. 359; 2 Perry on Trusts and Trustees, 6th ed. sec. 864; Wood on Limitations, 3d ed. sec. 200, p. 464; *Felkner* v. *Dooly*, 28 Utah, 236, 78 Pac. 366, 3 Ann. Cas. 199; 39 Cyc. 603; 28 Am. & Eng. Ency. Law, 2d ed. p. 1134.)

[2] Appellant knew full well that at the time she accepted the deed on July 13, 1903, the trustee contended that she had no interest in the property in question, but

that it was the property of Newton Nevada Jacobs. At no time after accepting the deed mentioned did she receive or demand the rents and profits of the Lachman building. The trustee collected and retained them, and no question as to his right to do so was raised for about nine years. After all this time she cannot be heard to say that she did not understand the trustee's position, and that it was not clearly an assertion of an adverse title to the property in question. In our opinion, the findings of fact and conclusions of law made by the lower court were justified.

[3] Where an act is done by a trustee which purports to be an execution of a trust, he is thenceforth to be regarded as standing at arm's length from the *cestui que* trust, who is put to the assertion of his claim at the hazard of being barred by the statute. (*Coleman* v. *Davis*, 2 Strob. Eq. 334.)

[4] It is urged by the appellant that because of the marriage relationship which existed between her and the trustee at the time she received the deed from him, and of the confidence growing out of that relationship, she was misled and deceived by him into accepting the deed in question, and that by virtue of the misrepresentations she was defrauded. The fact is that in September, 1904, that relationship ceased. Having ceased, and being in possession of all the facts, she could no longer assert that she was under the trustee's influence.

[5] It is contended by the appellant that there was no evidence introduced at the trial to sustain the finding of payment of taxes by appellee, Philip Jacobs. The answer, which was verified, alleged payment of taxes, and this allegation was not denied by the replication. Consequently it was not necessary to offer evidence on the point.

[6] It is urged by the appellant that the trial court committed reversible error by receiving, subject to objection, incompetent evidence. The evidence was afterward stricken out by the court and was not taken into consideration in arriving at a judgment. Appellant was in no way prejudiced, and the case should not be reversed

Points decided

because of the admission of . the evidence. (*Rehling* v. *Brainard*, 38 Nev. 16, 144 Pac. 169.)

Entertaining the views we do, it follows that the judgment of the lower court should be affirmed.

It is so ordered.