[No. 756-3. Division Three. December 4, 1974.]

OWEN F. KOLLER et al., Appellants, v. IVY L. BELOTE et al., Respondents.

Henry S. Savage (of Savage & Nuxoll), for appellants.

Kenneth B. Myklebust (of Irwin, Friel & Myklebust), for respondents.

GREEN, C.J.—Plaintiff brought this action to recover a real estate commission.[1] Defendants counterclaimed for damages alleging that plaintiff acted as a dual agent without their knowledge or consent and failed to reveal facts material to their relationship. Appeal is taken from a judgment dismissing plaintiff's complaint and awarding damages to the defendants upon their counterclaim.

The sole issue presented is whether the trial court's findings are supported by substantial evidence. This factual question will be considered in the context of the general legal obligations imposed upon a real estate broker acting as agent for both buyer and seller.

The law on this point is clear:

> This dual agency relationship, while extremely delicate, is permissible when both parties have full knowledge of the facts and consent thereto.

*Brandt v. Koepnick,* 2 Wn. App. 671, 674, 469 P.2d 189 (1970). In order to comply with the test stated in *Brandt,* there must be a clear and express disclosure of the dual agency relationship. *Investment Exch. Realty, Inc. v. Hillcrest Bowl, Inc.,* 82 Wn.2d 714, 513 P.2d 282 (1973); *see* Annot., 48 A.L.R. 917; 12 Am. Jur. 2d *Brokers* §§ 87, 89 (1964). *Mersky v. Multiple Listing Bureau,* 73 Wn.2d 225, 437 P.2d 897 (1968), is illustrative of a real estate broker's duty of loyalty and full disclosure to his principal. In denying a commission to a broker who sold his principal's property to his sister, the court, in *Mersky* at page 228, noted that from the agency relationship between broker and principal

> springs the duty and the obligation upon the part of the listing broker, as well as on the part of his subagents, to exercise the utmost good faith and fidelity toward his principal, the seller, in all matters falling within the scope of his employment.

---

[1] The use of the term "plaintiff" shall refer only to Owen Koller, as he is the sole participant among plaintiffs in the present action.

and further held that one in the position of a broker has a duty to:

[S]crupulously avoid representing any interest antagonistic to that of the principal in transactions involving the principal's listed property, or otherwise self-dealing with that property, without the explicit and fully informed consent of the principal; and to make, in all instances, a full, fair, and timely disclosure to the principal of all facts within the knowledge or coming to the attention of the broker or his subagents which are, or may be, material in connection with the matter for which the broker is employed, and which might affect the principal's rights and interests or influence his actions.

and concluded that:

[T]he duties of undivided loyalty, good faith and full disclosure, running from the broker and his subagents to the principal, embraces the obligation to timely reveal to the principal any close ties of kinship which may exist between the broker, or a participating subagent, and a prospective and proffered buyer or seller as the case might be.

Finally, where a broker is found to have breached this fiduciary duty, his commission will be forfeited. *Ramsey v. Sedlar*, 75 Wn.2d 901, 454 P.2d 416 (1969); *Wesco Realty Inc. v. Drewry*, 9 Wn. App. 734, 515 P.2d 513 (1973).[2] In light of these standards, we consider the following material facts for which there is substantial evidence in the record.

Defendant Marjorie Belote and one Lois Hanson were each owners by inheritance of an undivided one-half interest in over 1,000 acres of wheatland in Whitman County. On May 19, 1970, Mrs. Hanson gave a written 90-day listing to plaintiff upon her interest in the land "subject to concurrent listing for sale of interest held . . . by Marjorie R. Belote and Ivy L. Belote . . . for . . . $500 per acre cash . . ." On the same date, defendants gave plaintiff a

---

[2]RCW 18.85.230 allows the director to suspend or revoke the license of any broker who is found guilty of:

"(13) Charging or accepting compensation from more than one party in any one transaction without first making full disclosure of all the facts to all the parties interested in the transaction;"

written 90-day nonexclusive listing on the property "for the best price and upon the best terms available." Both listings provided for a real estate commission.

On May 25, 1970, plaintiff telephoned defendants in California to ascertain if they would be willing to trade their interest in the farm for a building in Lewiston, Idaho. Defendants stated they were not interested in the trade but wanted an outright sale. During June 1970 plaintiff contacted the defendants several times regarding the proposed exchange and sent them a brochure on the building. After much insistence by the plaintiff, defendants flew to Lewiston in July and with their attorney inspected the building. Defendants requested certain information on the operation of the building, which was not forthcoming, and they departed for California after arranging through counsel to have the building appraised. Plaintiff learned of the appraisal, obtained it and after marking certain portions sent it to the defendants who received it on August 13, 1970. On the following day, plaintiff telephoned the defendants and advised them that the figures in the appraisal were wrong. Defendants became very upset over the fact that plaintiff intercepted the appraisal, as they paid $300 for it and considered it privileged information. Thereafter, negotiations continued through defendants' counsel and in early September a contract of sale covering a trade of properties was prepared. This contract was never executed and defendants had no further contact with plaintiff.

In October negotiations began between defendants and the owner of the building, Gerald Anderson, for direct purchase of defendants' property without a trade. A direct purchase was eventually arranged and closed on January 21, 1971.

The record shows that plaintiff had been a friend of Anderson for several years and made a number of sales on his behalf, for which plaintiff received real estate commissions. In the instant case, plaintiff and Anderson agreed that if a trade were consummated, plaintiff would receive a commission of approximately $24,000. Such agreement was

never disclosed to the defendants who first learned of it through their counsel in September 1970. It further appears plaintiff knew that Anderson was at all times open to a direct purchase of defendants' property if a trade could not be consummated. Plaintiff never informed defendants of this fact. Anderson testified plaintiff was informed that for purposes of a trade the building was worth between $350,000 and $400,000, the latter figure including an adjacent building and parking lot. Notwithstanding plaintiff's knowledge of this fact, he represented to defendants that the building alone could not be secured for less than $400,000. Further, plaintiff testified that he was pushing the trade in order to secure a commission on the building as well as a commission for the sale of defendants' land.

Plaintiff seeks to avoid the impact of the law covering a dual agency relationship by pointing out that on the brochures mailed to defendants appears the following:

FARM & BUSINESS REALTY, INC.
Suite 209 Davenport Hotel Spokane, Wash. 99201
MA 4-2121
OWEN F. KOLLER—Broker

It is contended that this notation was sufficient to inform defendants that plaintiff was an agent for the sale of the building and that defendants' negotiations through their attorney constituted a consent to the dual representation. The trial court disagreed and so do we. The fiduciary obligations of a broker set out in *Mersky* require a clear and express disclosure in order to comply with the test in *Brandt* for a proper dual agency relationship. *See Investment Exch. Realty, Inc. v. Hillcrest Bowl, Inc., supra.* The discharge of this duty requires more than the mere transmittal of a brochure upon which the broker's name is listed. Defendants testified they were never aware of the fact that plaintiff had a long-time acquaintance with the owner of the building, that Anderson would consider a direct purchase of defendants' property, or that plaintiff would receive a commission upon a trade of the building. It

is clear that plaintiff pushed the trade over a direct sale for his own benefit and contrary to the express desires of defendants. Plaintiff's situation was impossible from the standpoint of his securing for defendants a prospective purchaser "for the best price and upon the best terms available." He could not represent the best interests of the defendants while attempting to assert the best interests of Anderson in the hope of securing a commission from both principals. A broker in the position of plaintiff has a duty to reveal all of the material circumstances that might influence the seller's consent to the broker's dual relationship before such consent can be held to exist so as to justify the broker's recovery of a commission. *Investment Exch. Realty, Inc. v. Hillcrest Bowl, Inc., supra.* There is substantial evidence in the record to support the findings of the trial court that these revelations were not forthcoming.

Consequently, plaintiff is not entitled to his broker's commission. *Ramsey v. Sedlar, supra.*

Finally, plaintiff challenges the award of $1,071 to defendants for transportation costs and expenses in visiting the Lewiston property at the plaintiff's insistence. While the evidence is not as specific as it might have been, the amount of the judgment is within the range of defendants' testimony.

Judgment affirmed.

MUNSON and McINTURFF, JJ., concur.